UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:23-cv-05268 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SPECTRUM PHARMACEUTICALS, INC., | : **SECURITIES EXCHANGE ACT OF** |
| WILLIAM L. ASHTON, BRITTANY K. | : **1934** |
| BRADRICK, SETH H.Z. FISCHER, | : |
| JUHYUN LIM, THOMAS J. RIGA, and | : **JURY TRIAL DEMANDED** |
| JEFFREY L. VACIRCA, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company") and the members of Spectrum's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Spectrum and Assertio Holdings, Inc. and affiliates ("Assertio").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Amended Registration Statement on Form S-4 (the "Registration Statement") to be filed on June 14, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Spade Merger Sub 1, Inc., a wholly-owned subsidiary of Assertio ("Merger Sub"), will merge with and into Spectrum, with Spectrum surviving the transaction as a wholly-owned subsidiary of Assertio (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 24, 2023 (the "Merger Agreement"), each Spectrum stockholder will receive: (i) the right to receive 0.1783 shares of Assertio common stock; and (ii) one-tradeable contingent value right ("CVR") for each share of Spectrum common stock owned, worth between $0.00 to $0.20 upon the achievement of certain sales milestones related to Spectrum's product ROLVEDON (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 35% of the combined company common stock outstanding and Assertio shareholders will own approximately 65% of the combined company common stock outstanding.

3. As discussed below, Defendants have asked Spectrum's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Spectrum's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of Spectrum stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant William L. Ashton has served as a member of the Board since February 2018 and is the Chairman of the Board.

11. Individual Defendant Brittany K. Bradrick has served as a member of the Board since May 2022.

3

12. Individual Defendant Seth H.Z. Fischer has served as a member of the Board since April 2020.

13. Individual Defendant Juhyun Lim has served as a member of the Board since March 2022.

14. Individual Defendant Thomas J. Riga has served as a member of the Board since January 2022 and is the Company's President and Chief Executive Officer.

15. Individual Defendant Jeffrey L. Vacirca has served as a member of the Board since November 2018.

16. Defendant Spectrum is a Delaware corporation and maintains its principal offices at Pilot House – Lewis Wharf, 2 Atlantic Avenue, 6th Floor, Boston, Massachusetts 02110. The Company's stock trades on the NASDAQ Capital Market under the symbol "SPPI."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

19. Spectrum, a biopharmaceutical company, develops and commercializes oncology drug products. It offers ROLVEDON (Eflapegrastim), a novel long-acting granulocyte colony-stimulating factor for chemotherapy-induced neutropenia. The Company develops Poziotinib, a novel irreversible tyrosine kinase inhibitor for non-small cell lung cancer tumors with various mutations. It has co-development, commercialization, and in-license agreements with Hanmi Pharmaceutical Co. Ltd.; a patent and technology license agreement with The University of Texas M.D. Anderson Cancer Center; and license agreement with Therapyx, Inc. The Company was

formerly known as NeoTherapeutics, Inc. and changed its name to Spectrum Pharmaceuticals, Inc. in December 2002.  Spectrum was incorporated in 1987 and is headquartered in Boston, Massachusetts.

20. On April 25, 2023, the Company and Assertio jointly announced the Proposed Transaction:

> LAKE FOREST, Ill., and BOSTON, April 25, 2023 (GLOBE NEWSWIRE) -- Assertio Holdings, Inc. (Nasdaq: ASRT) ("Assertio"), a specialty pharmaceutical company offering differentiated products to patients, and Spectrum Pharmaceuticals, Inc. (Nasdaq: SPPI) ("Spectrum"), a commercial stage biopharmaceutical company focused on novel and targeted oncology, today announced that they have entered into a definitive agreement pursuant to which Assertio will acquire all outstanding shares of Spectrum in an all-stock and contingent value rights ("CVR") transaction.
>
> "The addition of Spectrum's commercial capabilities and ROLVEDON, a novel long-acting G-CSF product recently launched into a blockbuster market in October 2022, exemplifies Assertio's attractiveness as an acquirer of new, accretive assets across diverse therapeutic categories, and ability to continue their growth and achieve profitable contributions faster and more efficiently than could be achieved on a standalone basis. We intend to retain the majority of Spectrum's commercial infrastructure, which we believe is synergistic to our digital non-personal platform, deploying these complementary dual channels to support clinical messaging, reimbursement education and ROLVEDON awareness to further aid and accelerate its launch," said Dan Peisert, President and Chief Executive Officer of Assertio.
>
> "We are excited to combine with Assertio in a transaction that will deliver significant value to our stockholders and the opportunity to share in the future upside of ROLVEDON," said Tom Riga, President and Chief Executive Officer of Spectrum Pharmaceuticals. "Our mission at Spectrum has always been to make a difference in the lives of patients and with Assertio, we have a partner that will enable us to deliver on this promise. Our combined assets and commercial infrastructure will position us to accelerate ROLVEDON's launch for the benefit of patients, maximize its potential and drive further growth. We are proud of

the launch trajectory our team has achieved with ROLVEDON and look forward to an exciting new chapter."

**Terms of the Agreement**

Under the terms of the agreement, at closing, Spectrum stockholders will receive a fixed exchange ratio of 0.1783 shares of Assertio common stock for each share of Spectrum common stock they own, implying an upfront value of $1.14 per Spectrum share (approximately $248 million) based on Assertio's stock price on April 24, 2023 and an initial 65% premium to Spectrum's closing price on such date. Additionally, Spectrum stockholders will receive one CVR per Spectrum share entitling them to receive up to an additional $0.20 per share in total (approximately $43 million), payable in cash or stock at Assertio's election, for $1.34 (approximately $291 million), a total potential premium of 94%. Subject to adjustments, each CVR shall represent the right to receive $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $175 million during the calendar year ending December 31, 2024, and $0.10 payable upon ROLVEDON net sales (less certain deductions) achieving $225 million during the calendar year ending December 31, 2025.

Following the close of the transaction, Assertio stockholders will own approximately 65% of the combined company, and Spectrum stockholders will own approximately 35%, on a fully diluted basis.

**Transaction Strategic and Financial Rationale**

**Strengthened Commercial Infrastructure and Resources:** Assertio's innovative digital non-personal sales model complements Spectrum's in-person commercial infrastructure, providing greater market access and resources than either company as a standalone entity.

**Expected to Be Accretive to Adjusted EPS and Operating Cash Flow in 2024:** Assertio intends to retain the majority of Spectrum's commercial team and add operating costs of approximately $60 million annually. The remaining cost synergies are expected to accelerate and enhance the profit opportunities for the combined company and generate double-digit accretion to adjusted EPS and increased operating cash flow in 2024.

**Enhanced IP Portfolio:** ROLVEDON's intellectual property protection is anticipated to extend through 2036, complementing Assertio's portfolio of traditional and non-traditional IP protection,

including assets with protection extending beyond 2040 and plans to secure additional protections on existing assets.

**Improved Strategic Profile:** The transaction enables the combined company to have a more scalable and competitive infrastructure for continuing the development and acquisition of existing and prospective new commercial- and late development-stage products suited to Assertio's unique omni-channel sales strategy.

**Platform Diversification:** In addition to Assertio's key assets Indocin, Sympazan and Otrexup, Spectrum's key asset ROLVEDON will represent meaningful further asset diversification. ROLVEDON is a long-acting growth factor (G-CSF) indicated to decrease the incidence of infection, as manifested by febrile neutropenia, in adult patients with non-myeloid malignancies receiving myelosuppressive anti-cancer drugs associated with clinically significant incidence of febrile neutropenia.

**Access to Capital Markets:** With enhanced scale and greater diversification of revenue generating commercial assets, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the capital markets.

**Approvals and Timing to Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the third quarter of 2023, subject to approval by Assertio and Spectrum stockholders and the satisfaction of customary closing conditions.

* * *

**Advisors**

Guggenheim Securities, LLC is acting as financial advisor to Spectrum, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

>SVB Securities and H.C. Wainwright & Co. are acting as financial advisors to Assertio, and Latham & Watkins LLP is serving as legal counsel.[1]

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Spectrum's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.    **The Materially Incomplete and Misleading Registration Statement**

22. On June 14, 2023, Spectrum and Assertio jointly filed the Amended Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

---

[1] *Assertio Holdings, Inc. to Acquire Spectrum Pharmaceuticals, Inc. in All Stock and CVR Transaction*, GLOBENEWSWIRE (Apr. 25, 2023), https://www.globenewswire.com/news-release/2023/04/25/2653629/0/en/Assertio-Holdings-Inc-to-Acquire-Spectrum-Pharmaceuticals-Inc-in-All-Stock-and-CVR-Transaction.html.

23. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Guggenheim in its analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Assertio which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, the management of Assertio and Spectrum prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors to aid them in forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-03 (Del. Ch. 2007).

24. For *Assertio Projections* and *the Assertio Adjusted Spectrum Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Operating Income and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. For *Spectrum Financial Projections* and *Assertio Stand-Alone Financial Projections Developed by Spectrum Management*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Gross Profit and

Unlevered Free Cash Flows, but fails to provide line items used to calculate these metric ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Registration Statement that were relied upon by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

28. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Spectrum*

29. With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the discount rate range of 13.00% to 16.00%; and (iii) the net present value of the cash tax savings from net operating losses as projected by Spectrum management.

30. With respect to Guggenheim's *Equity Research Analyst Stock Price Targets* analysis, the Registration Statement fails to disclose: (i) the research analyst reports observed; and (ii) the price targets published by each research analyst report.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Assertio*

31. With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal value of Assertio; (ii) the inputs and assumptions underlying the discount rate range of 11.75% to 14.25%; and (iii) the net present value of the cash tax savings from net operating losses as projected by Assertio management.

32. With respect to Guggenheim's *Equity Research Analyst Stock Price Targets* analysis, the Registration Statement fails to disclose: (i) the research analyst reports observed; and (ii) the price targets published by each research analyst report.

33. With respect to Guggenheim's *Pro Forma Discounted Cash Flow Value Analysis*, the Registration Statement fails to disclose: (i) the after-tax synergies to the combined company's unlevered free cash flows as provided by Spectrum management; and (ii) the inputs and assumptions underlying the discount rate range of 11.50% to 14.00% used in calculating the combined company's unlevered free cash flows.

34. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange

11

Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

12

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Spectrum within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

directors of Spectrum, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Spectrum, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Spectrum, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

45. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 21, 2023

                                                           **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4650
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*